May it please the court, my name is Sam Fortier. I represent Mr. Jachetta, and you pronounced it correctly, Your Honor. The nature of this case is basically, one, the scope and extent of the United States duties to protect an allottee, a native allottee, during the pendency of the allotment until it's approved from third party takings. And the second issue, we believe, is the appropriate forum in which to address takings issues when the state takes native property. In the proceedings below, the federal court held that there was no subject matter jurisdiction with respect to the federal government, although we had pleaded both federal tort claims action, and we had pleaded 345, 25 U.S.C. section 345, as well as numerous other claims. I'm just going to be talking about the federal tort claims action and the 345 action today. In addition, the court dismissed with respect to the state concerning what the court felt was the 11th Amendment bar, despite the state's concession that there was no state forum available. Today, we believe that there are two controlling issues that I want to talk about. First of all, the FPCA and section 345. I'm going to rely upon the brief for the remaining arguments. And as to the 11th Amendment argument, I will be discussing both 28 U.S.C. section 1360, which prohibits state takings of allotment property. It prohibits taxation by the state, and it prohibits any encumbrance by the state of allotment property. I will also be discussing 25 U.S.C. in light of the self-executing nature of the Fifth Amendment. First, though, I'd like to talk about some applicable rules of law with respect to allotments. The first issue, the first rule is that upon initial use and occupancy, inchoate rights attach and the land is withdrawn from other public entry. The second rule is that upon the filing of an application, equitable rights subject to federal title attach and relate back. The third rule is that upon the vesting of equitable interests under the Federal Pipeline Act, that's 30 U.S.C. 185, the land is no longer federal land. Now, the TAPA, the Trans-Alaska Pipeline Authorization Act, 43 U.S.C. 1652, specifically incorporates 30 U.S.C. 185. So therefore, Mr. Jeketa's land, from the time he applied for it and relating back to when he first began using it, was no longer available for material sites given to the Alaska Pipeline Service Company. It would no longer be available with respect to state use permits, free use permits. The facts of this case indicate that Mr. Jeketa first began using the property in the late 50s, early 60s. That's when his initial use and occupancy began. That he timely filed his application in 1971. But for a period from 1971, when he finally filed it, until 2004, when he finally received the certificate, the BLM, which had legal title and trust for Mr. Jeketa, who held the equitable title, in fact, gave the land, gave a series of entries to Alaska Pipeline Service Company and to the state of Alaska, as a result of which the state of Alaska, between itself and Alaska, dug out 600,000 cubic yards plus of gravel from the allotment, denuded the land, took away the trees, and destroyed the essential use of the land as to Mr. Jeketa. Now, with respect to the FTCA, I'd like to turn to that for a moment. The FTCA, the definition of what the government is liable for is it is liable in tort in the same manner and to the same extent as a private person under the laws of the state of Alaska under like circumstances. It constitutes a waiver of sovereign immunity. Counsel, let me ask you this. It appears to me that at least some of your claims would fall into the traditional definition of a tort under Alaska law. But I'm not very conversant with Alaska law. But let's assume that one such tort is a breach of fiduciary duty and that another such tort is the creation or allowance of a nuisance on someone's property. If those claims could go forward under the Federal Tort Claims Act, would those claims potentially give full relief to your client? With respect to the federal government's responsibility, yes, they would, Your Honor. We wouldn't need to rely upon the numerous other aspects of federal subject matter jurisdiction. And frankly, with respect to- So if we were to agree with your Federal Tort Claims Act theory on those two claims, would we need to decide any of the other federal government issues in the case if we agreed with you on the FTCA? You would not need to- no, you would not, Your Honor. No, you would not. And frankly, with respect to the FTCA action, under Alaska law, the breach of fiduciary duties constitutes a tort. In fact, Alaska has adopted Restatement of Tort Second, Section 874. And I don't believe we cited the case in our brief. In a case called Wyrum, in that- Wyrum v. Cash, excuse me, Your Honor. If you didn't cite that, if it's not cited in the briefs, would you provide that citation to the clerk and to opposing counsel after the argument is concluded? I certainly will, Your Honor. Thank you. Long and short of that case, though, with respect to Restatement Second, 874, is it a person who commits a breach of duty as a fiduciary is guilty of tortious conduct to the person to whom he should act. In this case, there can be very little doubt that the federal government owes fiduciary duties to the allottee during the period of time that the allotment is pending. Under Alaska law, that's a special relationship that creates fiduciary duties. Now, the trial court erred in that regard by holding that under Alaska law, you look not to the source of the law, but rather, you look to what the remedy is that's required or the damage that's requested. The federal district court held that the problem here was that the damages were economic. So therefore, the claim sounded in tort as- excuse me, in contract as opposed to tort. And that's clearly erroneous under Alaska law. More to the point- That the action can proceed against the state. So before you run short of time, would you turn to the 11th Amendment? I certainly will, Your Honor. Federal law, as I indicated, completely preempts Alaska's jurisdiction over Indian property, over native allotments. There's two statutes that apply to that, 28 U.S.C. 1360B, which the Supreme Court has held completely removes the ability of the federal court to- completely removes the ability of the state court to in any way adjudicate any allotment interest. In addition to that, there's also a federal statute, 25 U.S.C. Section 357, which requires that if the state or any condemning authority under state law intends to condemn native property, they have to go into federal court. Now, this court, in a case called Harrison against Hickle, held that in the instance where a claim raises a constitutional claim, or a lawsuit raises a constitutional claim, and there's no available forum, that raises serious questions. In another case this court decided, called Seven Up Pete, which we've cited in our brief, the court pointed out that the self-executing nature  that the regular 11th Amendment application is not altered, but also directed that states are to be available to adjudicate those taking claims. Now, you can see what the problem is, is that under state law, the state cannot adjudicate a takings claim involving the state coming in and taking property of a native allottee or during the period of time either while it's pending or when it's approved. There's no other forum. So, this case addresses a precise issue that Harrison was concerned about. What do we do about the fact, what do we do in this particular case? The state has argued that the problem is that there's another case called U.S. v. Clark, and U.S. v. Clark holds that you cannot use inverse condemnation if you're being sued as a state or condemning authority as an affirmative defense to a trespass action brought by the United States on behalf of the allottee. That isn't the situation here. The situation here is that the allottee is asserting that the federal district court has subject matter jurisdiction under 25 U.S.C. section 357 as an offensive action, because that's the only forum that's available. Now, applying the theory that this court, the Ninth Circuit has suggested before, that if the state court has to make available a forum in order to address the constitutional issue of a taking, then it's clear that in the case of Alaska Natives and a completely sui generis case such as this, the Federal District Court is the only available forum in which to take on the state for a taking, particularly when it takes 600. Yeah, but the jurisprudence on federal courts assuming jurisdiction over takings claims against states is really pretty clear. Your Honor, you know. And it's a constitutional bar. So if we've got a problem here, why doesn't that suggest the problem is with one of the federal statutes that precludes the federal court from, or the state courts from hearing the case? Well, Your Honor, because I think it goes one step further. And that one step further is that there's also a constitutional coverage, I believe, of why these matters have to be addressed in federal court. Well, you want to take Harrison suggesting that you have to have some kind of a forum for certain kinds of constitutional claims. That's a fairly indistinct right there. In that case, I think it was based on the petition clause in the First Amendment. Well, we have a very, very clear textual bar in the 11th Amendment against federal courts hearing cases against states where they can assert their sovereign immunity. So when we have an 11th Amendment bar like that, I'm not sure that that gets trumped by something under the petition clause. That may suggest that one or more federal statutes are unconstitutional to the extent that they deprive the state from providing you with a takings remedy, which we have said is a self-executing remedy under the 5th and 14th Amendments. Or alternatively, perhaps, Your Honor, the answer really is that the land in this case was held by the United States in trust for Mr. Jaquetta. So therefore, Mr. Jaquetta, in bringing the action, is acting, if you will, in ex-rel of the United States, which has refused to assist him in bringing the case. I mean, that's part of what we've complained in our complaint, too, as against the United States, is they aren't doing it. Clearly, and the state has admitted this in its briefing, the United States would be entitled to sue the state of Alaska in order to recover for the taking, which it's refused to do. Yeah, but now, is there another possibility here, which is that you might seek some kind of a declaratory judgment in federal court, which you then could take to the state court and enforce your takings claims? Your Honor, I... That's a little cumbersome, but... I don't believe so, because I think that the actual, the real gravamen of this is that the United States, which could bring the action because of the legal title, has refused to do that. So I really think that addressing this in terms more of this is a Mr. Jaquetta acting for and on behalf of the United States in order to assert claims that the United States needs to bring against the state of Alaska would be a more appropriate way to look at this. You're down to about two minutes. I will reserve the rest of the time, sir. I will reserve the rest of the time, sir. Good morning, and may it please the Court. My name is Justin Pidell. I'm here on behalf of the United States. The counsel table is Sean Lynch here on behalf of Alaska. I'm going to take the first ten minutes of the time, and he'll take the remaining five to address the Eleventh Amendment issues. As this Court is aware, the United States can only be sued when it is waived sovereign immunity, and such waiver must be unequivocally expressed in statutory text and... Would you get right to the question of the Federal Tort Claims Act, which clearly is a waiver of sovereign immunity for some things, and the question is what are the some things in this case? Why isn't there a tort available here, either a nuisance claim or a breach of fiduciary duty claim, both of which appear to be encompassed by the complaint? Certainly, Your Honor, if you don't mind, I'll take those in reverse order. The breach of fiduciary duty problem here is that while the Federal Tort Claims Act embodies state law insofar as a cause of action can be created, state law cannot define the relationship between the United States and Mr. Jeketa. That is a question of federal law, and this Court and the Supreme Court has been very clear that the relationship between the United States and Native Alaskans, tribes, or their members is defined by statutes, regulations, all manner of things that are not common law. Common law does not create a fiduciary relationship in this case. I don't understand why that makes any difference because a statute could create a relationship between a doctor and a patient or a lawyer and a client, and state law might still recognize that statutorily created relationship as a special relationship for the purpose of this kind of a tort. I don't see why a statutory creation eviscerates the possibility of there being a fiduciary relationship. I think the problem here is that to the extent the United States has breached a statutory duty to Mr. Jeketa, the analysis as to whether or not there should be money damages is not, does not fall under the Federal Tort Claims Act, but is a Tucker Act question because it is the Tucker Act which waives the United States' sovereign immunity for money damages where there is a statutory obligation in play. And that's why you have all manner of proceeding in the Court of Federal Claims alleging breaches of trust by the United States where you have Indian plaintiffs. There's a whole line of Supreme Court cases dealing with, the Navajo cases, the Mitchell cases, and the CFC and the Federal Circuit have a very robust series of doctrines to deal with tribal trust questions. Those are questions that arrive out of the statutory obligations of the United States to the tribal members. As this Court said in the, and I'm going to, I'm sure I'm going to butcher the name of this tribe, but the Grove-Vontra tribe versus United States case, tribes cannot, and I quote here, allege an independent common law cause of action for breach of trust. That is precisely what Mr. Jeketa is trying to do. He's trying to allege a common law cause of action for breach of trust, which is foreclosed because the duties that the United States owes to him are defined by statutes and the breach of those duties can only be pursued in the Court of Federal Claims under the Tucker Act. Similarly, the Morongo Band of Mission Indians case also discusses the fact that those trust responsibilities that the United States have, again, arise under statutes or applicable regulations. To turn to the nuisance issues here, I think it's important to look at what the complaint alleges. The complaint alleges that a nuisance has been caused by pollution or contamination of Parcel B, which is the land that is at issue here, and that appears at J29, and the allegations relating to nuisance are in paragraphs 23 to 25 of the complaint. There is no claim that the United States issued a permit to allow deposition of pollution or can be held liable for nuisances caused by a permittee. I don't think that's at all established, nor do I think that Mr. Jeketa has done that. That seems to go to the merits, though, not to the question as to whether they can bring suit. I mean, that sounds like a fact-bound matter that you would want to press and say, well, although they've alleged a nuisance which comes under state law, which is therefore we're subject to under the FTCA, we don't think that it's meritorious in this case. Respectfully, Your Honor, I think it is a question of sovereign immunity here, and the Federal Tort Claims Act is somewhat strange insofar as it encompasses as a question of sovereign immunity circumstances that are attended to in the case, because the United States only waived sovereign immunity when a similarly situated private plaintiff could be held liable. Here, I'm not saying that they're going to be. No, but that doesn't mean that they would win. The language means that where a similarly situated person would be entitled to file a lawsuit, so. I don't disagree, Your Honor. I guess the point I'm trying to make is that looking solely at the permit that has been issued, which the district court certainly could do and this court can look at, and the allegation, which is an allegation of contamination, that is all that, from those two things, you can see that this claim cannot succeed, and that the United States, that any party that issued a permit that said to someone, go ahead and take some gravel off of this person's land, could not then be liable for a nuisance if the third party not only went out and took off gravel, but deposited some sort of pollution or contamination. Now, the factual allegations of the complaint, too, I think have a plausibility problem under Iqbal and Twombly, because they don't allege any facts related to contamination or pollution. The facts seem to be, the allegations are about the removal of gravel. Did the district court decide this on Iqbal grounds? It did not decide this on Iqbal grounds. That's a little outside of the scope of what the district court decided. Well, but I think that the plausibility analysis under Iqbal and Twombly is equally applicable to 12b1 questions, where, like here, there are really jurisdictional facts that are bound up in the determination of whether or not sovereign immunity is waived,  Your nuisance argument is interesting. It's just a little ironic, because although I think I see your point that the United States may not be similarly situated to what a private tortfeasor would be in this situation, a private tortfeasor might be in a situation analogous to the United States here if they bore some kind of fiduciary duty, which you've just dismissed previously. So if you had somebody who was holding land in trust for somebody else and then allowed somebody to come in and spoil the land, then you might have somebody that was liable for nuisance. And I would just add to that observation that the allegations of the complaint, even if they don't support a separate claim of breach of fiduciary duty, do allege that there is a fiduciary relationship. They do. But again, I think that's a question of law as to whether or not there is that the United States owes fiduciary duties, common law fiduciary duties, to Mr. Jaquetta and other Native Alaskans or Indians, and that that question of law has been resolved both by this court and the Supreme Court. And the answer is no. In your argument about the breach of fiduciary duty claim, if I understood you correctly, you said there is an available claim. It's just brought in the wrong court. If that's the case, is transfer an option as distinct from dismissal? Well, Mr. Jaquetta has certainly never responded with that. And I don't know that I can give you a definitive answer. He did, in fact, bring a claim in the Court of Federal Claims.  And that claim was dismissed by the CFC on timeliness grounds. So I think at this point, he has pursued that alternative ground, that alternative forum, and has lost. And I don't think it falls within this court's purview to sort of collaterally review the CFC's judgment on that matter, particularly where Mr. Jaquetta did not appeal from that judgment.  I'm happy to answer any further questions about this or the other two waivers of sovereign immunity that have been raised if the court has them. I think we don't, and we'd be happy to hear from the other counsel. Thank you very much, Your Honors. Good morning, Your Honors. Sean Lynch with the State of Alaska. The appellate here has set up the argument that 25 U.S.C. 357 abrogates the state's 11th Amendment immunity, and the statute clearly does not. In order for Congress to abrogate the 11th Amendment immunity, it has to make it – there has to be an unequivocally expressed intent to abrogate. For 25 U.S.C. 357, on its face, it directs that lands allotted in severalty to Indians may be condemned. The only defendant – the only possible defendant under 25 U.S.C. 357 is an allottee. It's impossible for a state or any other condemning authority, which could be a utility, a railroad, a municipality, none could be a possible defendant. On its – on its face – well, and in fact, the Supreme Court in Tascadero said that the text of the statute must be unmistakably clear that Congress intends to abrogate. And here, I think on its face, it's obvious that that would happen. You're not arguing that the state is not responsible for takings, but you are – but you are arguing here that 357 doesn't waive the state's 11th Amendment? That's precisely – Restriction in federal court. Yes. That if this – if the state were to take the land, the state would take the land through 25 U.S.C. 357. It does authorize the state or any other condemning authority to condemn allotted land. May it still under the 14th and 5th Amendments then be liable to provide just compensation? In state court. In state court. Yes, but not in – but not in federal court because of the 11th Amendment. And any time that Congress sets up an exclusive remedy, it's going to create a tension with the 11th Amendment. So does Mr. Giacchetti then have an action against the state in state court? Mr. Giacchetti doesn't, but that is a creation of federal law that – So the problem is 1360? Is – that is exactly correct. 1360 makes the federal court the exclusive court and it makes it any remedies exclusive federal remedies. But this does not deprive Mr. Giacchetti of a forum because as U.S. v. Clark, the Supreme Court points out that the forum is the – under the Tucker Act, he has a forum in the federal court of claims. And I would even go – He doesn't have a Tucker Act claim against the state, does he? He does not. His remedy is against the federal government for – Does he have any remedy for the actions of the state in any forum for damage that was done to him and his property interests? Because this claim was brought so late. So for this particular claim, not that I am aware of. In theory, let's start with Plaintiff X, who is in a similar situation. Is there a remedy against the state of Alaska for its acts in damaging the Plaintiff X's property? Most definitely. The plaintiff, once a highway department is surveying the property where they're going to put a gravel pit, that plaintiff can bring the commissioner of transportation into federal court along with the federal government, who's always a necessary defendant, along with the federal government. So we have the same setup. But this has to be – the elati has to defend his claim. The problem here is the time delay is really what created the major problem, that the damage was done. So if the damage is done, if it all happens very quickly and you don't have a statute of limitations problem, once there's damage done, it sounds like you're saying there is no remedy. The state can build its gravel pit if it does it fast, too fast to get an action started. And there's no recourse against the state for that? There – the recourse would be – the recourse under U.S. v. Clark is against the federal government. The federal government is a necessary party, necessary defendant, and the trustee of the land. So the recourse, because of the 11th Amendment and because of the exclusive federal remedy, we do bump into a problem with any time that the damage has happened. So let me just spin out one other question here. If any claim is permitted to go forward against the federal government, can the federal government then turn to the state and sue for contribution or something? And I'm sorry that that didn't come to mind when I was answering the question. That the federal government can always bring in the state government. If there's going to be an inconsistent or incomplete remedy, that is always available. So the 11th Amendment does not protect the state from suits from the federal government. I want to make sure I understand your answer – your anterior answer to Judge Graber. Let's suppose that Mr. Chiquetta had property that was – that had not been damaged by anybody. The state decided to build a gravel pit and mistakenly constructed part of its gravel pit on Mr. Chiquetta's land. They didn't – they didn't intend to construct it on Mr. Chiquetta's land. They missurveyed it. They did something. Chiquetta doesn't realize that they established the lines. Now, does Mr. Chiquetta have an action against the state? He has, and this is in two ways. And hopefully he sees the stakings and the warming tractors and goes to court. So he has the – But if the gravel pit gets built, then he's out of luck. So the first – the first, the ex parte young, if he waits until afterwards, then that – then that course is not available. However, since the federal government is a necessary party in any action with an allotment, he would sue the federal government and – Why would he sue the federal government? They're out of it. They've given him an allotment. They're done. They remain a trustee, though. And that is the 43 U.S.C. – I'm sorry, 28 U.S.C., 1360. And there is a second – 25 U.S.C., 345. So that is the initial actions for an allotment, for the granting of allotment. But he has no action – he has no action in Alaska state court against the state for a taking. Congress has never granted that action. And that problem, again, is 1360. That is 1360. Or either that or 25 U.S.C., 357. And if he were – if he were an ordinary citizen of Alaska who had acquired this property through other means and it was not an allotment, then he could bring the case in state court. The grant could have been billed on his land mistakenly. No problem. He gets right straight into Alaska state court. Because he's a Native American, he's out of luck. Because Congress did not abrogate the 11th Amendment immunity – and I wouldn't say he's out of luck. He still has available – hopefully he's quick, where his best bet is Ex parte Young, bringing in the commissioner for an injunction. But then he still has a remedy of the Court of Claims, the Tucker Act, and the – bringing in the state and federal, similar to this case, where the federal government would have to bring in the state. MS. MCGOWAN. Got it. Thank you. We appreciate your argument. And do you have some rebuttal time? MR. GARGANO. I have just a very few points, Your Honors. First of all, with respect to the Federal Court Claims the government has suggested that the remedy here would be through the Tucker Act. The government is demonstrably in error in that. I'd bring to the Court's attention several points. First of all, is the fact that under Alaska law, Alaska specifically recognizes that when there's a special relationship, as it has between Alaska Natives and the federal government, that gives rise to fiduciary duty. Under – when there's a special relationship, under Alaska law, the fiduciary is liable in tort to the beneficiary. We properly sued the federal government under the FTCA. Examples of that from the Ninth Circuit that come immediately to mind, and this may be a case we didn't cite, is the Bayer Medicine against Schweitzer case. It's a 2001 case involving the Montana law. Montana law itself is very similar to Alaska law in finding that a breach of fiduciary duties gives rise to a tort and also examines the fact that under Montana law, there is a recognition of a special relationship that's been going on for a long time between the federal government and individual Natives. Similarly, in Alaska, there's a long line of cases that between Alaska Natives and the federal government. The case that comes immediately to mind to me is Baker v. John, which is a fairly recent Supreme Court case, and I will give those cites. Please give those cites to opposing counsel and the clerk after this. With respect to the questions concerning the state of Alaska and the sovereign immunity question, what I'd like to do is respond a bit, as was suggested by Judge – to a question that Judge asked. What we have is a 5th and 14th Amendment violation. What happens in the state under the Alaska Native Allotment Act is that Native people are treated differently than non-Native people when it comes to protection of property. I suggest to the Court that under that situation, that Clause 5 of the 14th Amendment waives the 11th Amendment immunity, and this becomes a civil rights action. Thank you. Thank you, Counsel. We appreciate the arguments of all counsel. It's been very helpful in this difficult case. The case is submitted, and we stand adjourned for this session.
judges: Alarcon, Graber, Bybee